UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**NAUMAN A. ALY,**<br><br>Defendant. | 16 Civ. 3853 (PGG) (GWG)<br><br>Reply Memorandum of Law In Support Of Motion For Judgment Against The SEC<br>Re: Dkt. Nos. 96-103 |

Defendant Aly would not have filed the Schedule 13d on April 12, 2016, if he had a fair notice of the SEC's narrow and vague interpretation of the term beneficial ownership in this case. No statements would have reached investors, much less misleading.

The U.S. Congress does not define the term "beneficial ownership". The SEC, however, has always construed it broadly so as to ensure disclosure from all those persons who have the ability to change or influence control. The SEC has stated that the "beneficial ownership does not turn on who owns legal title to the stock, or who is the registered owner, or in whose name the stock is held". The Brokaw Act, if passed and turned into law, would further expand the definition of beneficial ownership to include any person who has a "pecuniary or indirect pecuniary interest in such security".

In this case, however, the SEC seems to be interested in proving the lack of beneficial ownership. Thus, using its deference power, it has made a novel argument that if there is no documented evidence of a beneficial holdings, such a holdings does not exist. And that is true even if the beneficial holder files a schedule 13d declaring under criminal liability that he indeed does have beneficial holdings as stated.

Then, the SEC wants to use that approach to prove liability over a member of the group,

1

who even though correctly reported his own beneficial holdings, but allegedly failed to see that the rest of the beneficial holdings allegedly did not exist. That is, did not exist based on the SEC's novel narrow approach, even if it did exist based on the SEC's incessantly adopted broad approach.

Irrespective of whether or not such an approach is correct or wrong, or whether the SEC would accept this novel approach against itself other way around, the defendant in this case is making an argument that he would not have filed the Schedule 13d at all if he had a fair notice of the SEC's novel interpretation.

The SEC has always used the term beneficial ownership broadly and never gave a fair warning that when the it comes to prove the lack of beneficial ownership, it would simply give up its broad approach as no longer favorable. If a defendant is not given a fair notice of an interpretation that the plaintiff later uses to prove the essential elements of its claim, that defendant cannot be held liable no matter how reckless its conduct. This is because there is no way for a Court to know how the defendant would have reacted if it had a fair notice before the conduct.

Here, the defendant believed that he needed to file the Schedule 13d because he believed that he became the beneficial owner of someone else's securities. Under the SEC's broad approach, not filing a schedule 13d if still a member of the group could have possibly led to criminal liabilities. (See 15 U.S.C. § 77x). Thus, without a fair notice of the SEC's novel approach, there was a possibility that the defendant would have ended up violating the law one way or another.

The defendant does not seek to relitigate arguments or introduce new facts; he seeks only a decision on an argument that he already made and consideration of the facts that he already

presented. In his memorandum of law opposing the SEC's motion for summary judgment (Dkt. No. 67 at 8-10), the defendant stated the following:

"The SEC alleges that the Schedule 13D was inaccurate because contrary to the representation in the filing, Mr. Sun did not hold a beneficial interest of 4.4% of the outstanding common stock of IDTI. The only argument that the SEC makes in this regard is that there appears to be no documented evidence of Mr. Sun's stated beneficial holdings in IDTI. The SEC's argument is irrelevant because "beneficial ownership does not turn on who owns legal title to the stock, or who is the registered owner, or in whose name the stock is held". The SEC's proposed jury instructions in SEC v. Wylys, No. 1:10-cv-05760 (SAS) (S.D.N.Y.) Document 311 Filed 04/29/14 at 31-32, 44, citing SEC v. Drexel Burnham Lambert Inc., 837 F.Supp. 587, 607 (S.D.N.Y. 1993); SEC v. Levy, 706 F.Supp. 61, 69 (D.D.C. 1989); SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1163 (D.C. Cir. 1978); Wellman v. Dickinson, 682 F.2d 355, 366 (2d Cir. 1982).

"A person can have or share investment or voting power over securities and thus be a beneficial owner of those securities even if that person has no right to enjoy the sales proceeds and other benefits associated with those securities. Conversely, one may have the sole right to the benefits associated with securities yet lack the investment or voting power necessary to make that person a beneficial owner". Id. at 32.

In addition, written documentation of a formal put/call is neither conclusive nor even probative evidence of whether an understanding existed for purposes of 13(d) prior to the execution of the put/call agreement. SEC v. First City Financial Corp.,

688 F.Supp. 705, 723 (D.D.C. 1988), aff'd, 890 F.2d 1215 (D.C. Cir. 1989). A put and call agreement, even if informal, constitutes beneficial ownership to the investor of the stock subject to the agreement. First City, 890 F.2d at 1221. Indeed, requiring formal documentation could render nugatory the purpose of the statute. First City, 688 F.Supp. at 723. Argument that beneficial ownership can only be proven by some form of documented evidence must be rejected. Id. at 722.

Furthermore, the doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). To determine whether judicial estoppel applies, courts examine such factors as whether: (1) the party's later position is clearly inconsistent with its earlier position; (2) the party succeeded in persuading the court of its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) the party would derive an unfair advantage against the opposing party if not estopped. Id. at 750. In addition, the SEC's prior inconsistent position is a statement by a party opponent. Fed. R. Evid. 801(d)(2). U.S. v. Ganadonegrao, 854 F.Supp.2d 1088, 1115-28 (D.N.M. 2012); SEC v. Berger, 244 F.Supp.2d 180, 189 (S.D.N.Y. 2001); SEC v. Wylys, Dkt. No. 206 Filed 10/15/13 at 17-18.

On April 12, 2016, Mr. Sun held a 4.4 percent beneficial ownership in IDTI. Aly Decl. Ex. 1 (Schedule 13D) at 4-5, 19, 22-23, 25-26; Aly Decl Ex. 2 (Schedule 13D/A) at 4-5, 18, 20-21; Aly Decl Ex. 32 (IDTI Trading And Other Data) at 18-19. If a filer of Schedules 13D lists securities as being beneficially owned by him, then that

4

is in itself some evidence that the filer does beneficially own the securities. Consequently, this allegation should be denied."

The defendant also asked the Court to preclude the third opinion of the SEC's expert for the same reasons. (Dkt. No. 65 at 6-10).

"All in all, Mr. Grigoletto's third opinion, as well as the identical contentions in the Declaration of Patrick A. McCluskey, are unreliable, inapposite as a matter of law, and would confuse the trier of fact as to why an expert is giving an opinion that there appears to be no documented evidence of Mr. Sun's stated holdings in IDTI when Mr. Sun never had an opportunity to circumvent the beneficial ownership reporting requirements under Section 13(d) even if that was true."

In his opening brief in support of this motion, the defendant once again argued that the SEC would not accept its own expert opinion the other way around. (Dkt. No. 99 at 3).

"For instance, the SEC has retained an expert in this case who has given opinion that Mr. Sun is not a beneficial owner of his over-the-counter American style call options because his holdings do not show up in the LOPR list. In other words, Mr. Sun could have circumvent the beneficial holdings reporting requirement under Section 13d by acquiring over-the-counter call options and making sure his holdings do no show up in the LOPR. The SEC won't like it other way around, however. It would still find Mr. Sun beneficial holder under Section 13d-3. This would be true even if Mr. Sun retains the SEC's own expert in his defense to give the exact same opinion as he has given in this case. This is the definition of vague."

In other words, the SEC's evidence in this case does not reflect the agency's fair and considered judgment on the matter in question, but a mere convenient litigating position. See Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2166-67 (2012) (Deference is undoubtedly inappropriate, for example, when the agency's interpretation is plainly erroneous or inconsistent with the regulation. And deference is likewise unwarranted when there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question. This might occur when the agency's interpretation conflicts with a prior interpretation, or when it appears that the interpretation is nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack).

When the defendant made his original argument, he did not know that the Court will accept the SEC's inconsistent approach to the term beneficial ownership. It is the Court's acceptance of the SEC's novel approach, that is not the Court's reasoning but its apprehension, is the defendant asking the Court to reconsider. The lack of fair notice is a violation of the defendant's due process rights. The Court should had judicially estopped the SEC for that. The SEC's novel approach to the term beneficial ownership is also vague. And vague laws by default do not give a fair notice of what is forbidden or required. This is thus a clear error of law. And a need to prevent manifest injustice exists here.

The SEC's narrow approach in this case does not add up with its incessantly adopted broad approach, specially in group scenarios. The defendant only needed to file the Schedule 13d because he became the beneficial owner of someone else's securities. Section 13(d)(1) of the Exchange Act deals with "acquiring . . . . beneficial ownership" and Exchange Act Rule 13d-5(a) provides that "acquisition" may be made through purchase "or otherwise". By taking a narrow

approach to the term beneficial ownership, the SEC has made it indecisive, and turned the statue void for vagueness.

The SEC also thrashes a straw man as it contends that the defendant's motion seeks to "claim lack of fair notice of the proscription against defrauding investors." (Dkt. No. 103 at 4-5). The motion does no such thing; defendant argued:

> "Mr. Aly would have faced criminal liability if he had decided not to file a Schedule 13d solely for the reason that Mr. Sun's beneficial ownership was not documented." (Dkt No. 99 at 1), and

> "Had the SEC given a fair notice to Mr. Aly, he would have acted differently. He would have asked Mr. Sun of documented evidence of his beneficial holdings. And if Mr. Sun had failed to provide one, Mr. Aly would have left the group. This is because staying in the group and not filing a Schedule 13d would no longer had been an option for Mr. Aly because he could still be deemed beneficial owner and faced criminal liability based on the SEC's broad view of the term." (Id. at 2).

Nowhere in this entire case has the defendant argued that Section 10(b) or Rule 10b-5, or Section 17(a) are themselves facially invalid.

The SEC's reliance on <u>Valicenti Advisory Servs, Inc. v. SEC</u>, 198 F.3d 62 (2d Cir. 1999), in this regard is misplaced. There the defendant, who had worked in the investment industry since 1967, consciously rejected his marketing manager's recommendations to provide more disclosure, chose to exclude accounts valued under $100,000 because of their higher transactional costs, decided to add accounts with positive rate of returns (RORs), struck from the list accounts with negative RORs, and created another document which inflated defendant's performance relative to

other investment advisers. The Second Circuit rejected the defendant's due process argument because the SEC sanctioned petitioners for intentionally misrepresenting past performance. Here, Mr. Aly's due process argument is based on the SEC's novel approach developed <u>after</u> the conduct, through which it "changed course" and significantly altered what the SEC always deemed to be the "key consideration[s]" for establishing statutory violations under the term beneficial ownership. <u>FCC v. Fox Television Stations, Inc.</u>, 132 S. Ct. 2307, 2317-18 (2012).

Similarly, the SEC's reliance on <u>SEC v. Pentagon Capital</u>, 612 F.Supp.2d 241 (S.D.N.Y. 2009), a decision on motion to dismiss, is inapplicable here for the same reason. "It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference." In <u>Christopher v. SmithKline Beecham Corp.</u>, 132 S.Ct. 2156, 2168 (2012).

"[A]n agency should not change an interpretation in an adjudicative proceeding where doing so would impose "new liability ... on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements" or in a case involving "fines or damages". (Id. at 2167). See also <u>THE ENDURING AND UNIVERSAL PRINCIPLE OF "FAIR NOTICE"</u> By Theodore J. Boutrous, Jr. Partner, Blaine H. Evanson, Associate Gibson, Dunn & Crutcher LLP. (Citing multiple cases).

https://www.gibsondunn.com/the-enduring-and-universal-principle-of-fair-notice/
https://southerncalifornialawreview.com/wp-content/uploads/2013/01/86_193.pdf

The SEC also states that its case is not based on the novel interpretation of the term beneficial ownership, but on other evidence it has presented. (Dkt. No. 103 n.2 at 4). This is

8

equivalent to the SEC conceding that it indeed not give a fair notice of its novel approach but that it makes no difference. But as the defendant stated in his opening brief, "the SEC has directly or indirectly used its narrow and vague approach, of which the defendant had no fair notice before the conduct, to prove each elements of its claims, including scienter." (Dkt. No. 99 at 3-4).

In fact, all the SEC allegations, arguments, and evidences in this case are so intertwined with its narrow and vague interpretation of the term beneficial ownership, that bifurcation as such is impossible. Id. If the Courts finds that the defendant had no fair notice of the SEC's narrow and vague interpretation of the term beneficial ownership in this case, the entire complaint should fall.

Under Fed. R. Civ. P. 54(b), a Court can review an interlocutory order and reopen any part of a case before final judgment "at any time". This Court also has inherent power to reconsider an interlocutory order as justice requires. As discussed above, lack of fair notice is a violation of the defendant's due process rights, a manifest injustice. The Court's summary judgment Order, did not "direct entry of a final judgment as to one or more, but fewer than all, [of the SEC's] claims or parties". Accordingly, under Rule 54(b)'s plain language, the order, "however designated", is interlocutory. An interlocutory order "may be revised at any time" before the entry of final judgment.

In addition, on March 28, 2018, the very next day after the Court's summary judgment Order, the defendant filed a motion to modify preliminary injunction for release of his untainted funds. (Dkt. No. 84). In his opening brief, the defendant requested "that the deadline for him to file a motion for reconsideration and the current schedule for the remedies briefing be adjourned sine die, and be set after the adjudication of this motion." (Id. at 2). Similarly in his Reply brief filed on April 12, 2018, the defendant once again stated that his "request for extension of deadline

to file motion for reconsideration be granted nunc pro tunc." (Dkt. No. 94).  The Court did not rule on the defendant's request for extension in its Order denying the defendant's motions to modify preliminary injunction.  (Dkt. No. 95).  The defendant's request, which the SEC did not oppose in its opposition brief (Dkt. No. 93), is thus still pending.

Finally, under the Fed. R. Civ. P. 54(c), except in cases of default, a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings".

Defendant Aly would not have filed the Schedule 13d on April 12, 2016, if he had a fair notice of the SEC's narrow and vague interpretation of the term beneficial ownership in this case. No statements would have reached investors, much less misleading.

Dated: May 15, 2018

Respectfully submitted,

/s/ Nauman A. Aly

NAUMAN A. ALY, *Pro Se*
Nauman_aly@hotmail.com