USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/5/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

     -against-

NAUMAN A. ALY,

                Defendant.

**ORDER**

16 Civ. 3853 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Securities & Exchange Commission (the "SEC") brings this action against pro se Defendant Nauman A. Aly, alleging that Aly fraudulently manipulated the price of publicly-traded securities by placing false information on the SEC's public database, EDGAR. (See Cmplt. (Dkt. No. 1) ¶ 1) The SEC alleges that Aly's sale of securities at artificially-inflated prices constitutes securities fraud in violation of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5. (See id. ¶¶ 44-51) On March 27, 2018, this Court granted the SEC's motion for summary judgment, and denied Aly's cross-motion for summary judgment.[1] (Order (Dkt. No. 82) at 47)[2]

        Aly now moves "for judgment against the SEC," arguing that the SEC violated his due process rights by narrowing its definition of the term "beneficial ownership." (Mot. for Judgment (Dkt. No. 96) at 1) Aly also requests that this Court vacate its summary judgment order, and stay the proceedings. (See Mot. to Vacate (Dkt. No. 97); Mot. to Stay (Dkt. No. 98))

---

[1] Familiarity with the March 27, 2018 Order is presumed.
[2] Unless otherwise indicated, the page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Filing system.

The SEC has moved for a final judgment against Aly, and requests that this Court impose the following remedies: "(1) a permanent injunction restraining and enjoining Aly from future violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; (2) disgorgement of $425,665 along with $1,419 in prejudgment interest; and (3) a civil penalty of $425,665." (Mot. for Remedies (Dkt. No. 105) at 1) The SEC asks that the entire balance of Aly's United States brokerage account – which is currently frozen pursuant to court order (see Dkt. Nos. 3, 13, 25, 95) – be transferred to the SEC in order to satisfy these monetary penalties. (Mot. for Remedies (Dkt. No. 105) at 1)

## I. ALY'S MOTIONS

Courts "read the pleadings of a pro se [litigant] liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Although Aly has not styled his motion for judgment, motion to vacate, and motion to stay as motions for reconsideration, all three motions ask this Court to vacate its summary judgment order. (See Mot. for Judgment (Dkt. No. 96); Mot. to Vacate (Dkt. No. 97); Mot. to Stay (Dkt. No. 98)) Accordingly, this Court will construe Aly's motions as a motion for reconsideration. See, e.g., Collins v. Blumenthal, 581 F. Supp. 2d 289, 290 (D. Conn. 2008) (construing motion for "Reinstatement of Dismissal" as a motion for reconsideration); Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 21660340, at *2 (S.D.N.Y. July 14, 2003) (construing pro se plaintiff's "Poor Person's Petition" as a motion for reconsideration).

"Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"

2

RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under [Local] Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader, 70 F.3d at 257).

Aly's motion for reconsideration is wholly without merit. Aly has not pointed to an intervening change in law, new evidence, or controlling law or facts that this Court overlooked. (See Mot. for Judgment (Dkt. No. 96); Mot. to Vacate (Dkt. No. 97); Mot. to Stay (Dkt. No. 98)) To the contrary, Aly seeks to raise new arguments that he did not present in his summary judgment briefing. (See Mot. for Judgment (Dkt. No. 96) at 1 (arguing that the SEC's definition of beneficial ownership violates his due process rights); Mot. to Vacate (Dkt. No. 97) at 1 (incorporating the text of his motion for judgment, and requesting that the Court vacate its order granting the SEC's motion for summary judgment)) "'A motion for reconsideration[, however,] is not an 'opportunity for making new arguments that could have been previously

3

advanced.'" Meilleur v. Strong, No. 10 Civ. 5371 (PGG), 2011 WL 12400345, at *1 (S.D.N.Y. June 20, 2011) (citations omitted). Accordingly, Aly's motions will be denied.[3]

## II. THE SEC'S MOTION FOR REMEDIES

The SEC has moved for judgment against Aly, asking this Court to impose the following remedies: "(1) a permanent injunction restraining and enjoining Aly from future violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; (2) disgorgement of $425,665 along with $1,419 in prejudgment interest; and (3) a civil penalty of $425,665." (Mot. for Remedies (Dkt. No. 105) at 1)

### A. Permanent Injunction

"Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act provide for the imposition of permanent injunctive relief when 'the defendant's past conduct indicates . . . that there is a reasonable likelihood of further violation in the future.'" SEC v. Jadidian, No. 08 Civ. 8079 (PGG), 2011 WL 1327245, at *5 (S.D.N.Y. Mar. 31, 2011) (quoting SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99 (2d Cir. 1978)); see also SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is

---

[3] Even if this Court were inclined to consider Aly's due process argument, it would fail on the merits. Aly has made no argument that would permit him to falsify a 5.1% stake in a public company, or file a Schedule 13D with material misstatements. (See Order (Dkt. No. 82) at 38-40) Moreover, "[d]ue process requires . . . only that 'laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" Valicenti Advisory Servs., Inc. v. SEC, 198 F.3d 62, 66 (2d Cir. 1999) (quoting Upton v. SEC, 75 F.3d 92, 98 (2d Cir. 1996)). Aly cannot "credibly claim lack of fair notice of the proscription against defrauding investors." See id. (rejecting claim that the SEC's failure to promulgate regulations "articulating specific standards for performance advertising" deprived defendants of due process).

4

whether there is a reasonable likelihood that the wrong will be repeated."). To determine whether a permanent injunction is appropriate, a court should consider:

> [(1)] the fact that defendant has been found liable for illegal conduct; [(2)] the degree of scienter involved; [(3)] whether the infraction is an "isolated occurrence;" [(4)] whether defendant continues to maintain that his past conduct was blameless; and [(5)] whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

Commonwealth Chem. Sec., Inc., 574 F.2d at 100. The Second Circuit has "noted that the court may properly view a culpable defendant's continued protestations of innocence as an indication that injunctive relief is advisable." SEC v. Lorin, 76 F.3d 458, 461 (2d Cir. 1996) (citations omitted). The district court "has broad discretion in deciding whether to grant or deny injunctive relief." Id.

Here, the factors weigh in favor of a permanent injunction. As an initial matter, this Court has determined that Aly is liable for illegal conduct, and the record makes clear that Aly exhibited a high degree of scienter. (See Order (Dkt. No. 82)) Indeed, Aly devised a scheme to manipulate the market and engaged in a series of acts designed to execute and conceal his fraudulent conduct: Aly obtained filing credentials from EDGAR under two separate accounts; filed a Schedule 13D with multiple false and misleading statements; purchased and sold Integrated Device Technology, Inc. ("IDTI") call options in order to profit from his fraudulent conduct; destroyed all of the documentation related to his fraudulent scheme; and disposed of his laptop. (See id. at 11-16, 34-47) Moreover, Aly continues to maintain that his past conduct was blameless, concocting a fanciful story to justify his conduct. (See id. at 11-16) Even after this Court's summary judgment ruling, Aly has refused to assume any responsibility for his actions, instead arguing – in a flood of recent filings – that his violations can be explained by the SEC's allegedly unfair "narrowing" of the definition of beneficial ownership. (See Dkt.

5

Nos. 96-101) In light of all of these factors, this Court concludes that there is reasonable likelihood that Aly will commit future securities violations. The SEC's request for a permanent injunction will be granted.

### B. Disgorgement With Prejudgment Interest

"Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct." SEC v. Contorinis, 743 F.3d 296, 301 (2d Cir. 2014). It is an "equitable remedy, imposed to 'forc[e] a defendant to give up the amount by which he was unjustly enriched.'" Id. (alterations in original) (citations omitted). "By forcing wrongdoers to give back the fruits of their illegal conduct, disgorgement also 'has the effect of deterring subsequent fraud.'" Id. (quoting SEC v. Cavanagh, 445 F.3d 105, 117 (2d Cir. 2006)); Manor Nursing Centers, Inc., 458 F.2d at 1104 ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits."). "The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation,'" and the wrongdoer bears "'any risk of uncertainty.'" SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1475 (2d Cir. 1996) (citations omitted). District courts have "'broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.'" Contorinis, 743 F.3d at 301 (quoting First Jersey, 101 F.3d at 1474-75).

District courts may also award prejudgment interest. "Prejudgment interest on a disgorgement amount is intended to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government." Id. at 308 (citing First Jersey, 101 F.3d at 1476); SEC v. Moran, 944 F. Supp. 286,

6

295 (S.D.N.Y. 1996) (An award of prejudgment interest "prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity."). "The decision to award prejudgment interest is governed by the equities, reflecting 'considerations of fairness' rather than 'a rigid theory of compensation,'" and "is 'confided to the district court's broad discretion.'" Id. at 307-08 (citations omitted). Courts have approved of the use of the Internal Revenue Service ("IRS") underpayment rate to calculate the amount of prejudgment interest in connection with disgorgement, because the "rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from [his] fraud." First Jersey, 101 F.3d at 1476.

Here, the SEC is seeking disgorgement of $425,665 – which constitutes the proceeds from Aly's sale of IDTI call options less costs (see Pltf. R. 56.1 Statement, Ex. 7 (Interactive Brokers Activity Stmt.) (Dkt. No. 62-8) at 2) – as well as an award of prejudgment interest in the amount of $1,419. (Pltf. Br. (Dkt. No. 106) at 5) The SEC has calculated the amount of prejudgment interest by applying the IRS underpayment rate for April 1 - June 30, 2016 – which is 4% annually – to the disgorgement amount of $425,665, for a one-month period.[4] (Id. at 5 n. 1) This Court concludes that the amount of disgorgement and prejudgment interest requested "is a reasonable approximation of [Aly's] unlawful profits from [his] fraudulent transactions." See First Jersey, 101 F.3d at 1475.

---

[4] Although the SEC could have sought prejudgment interest from the time Aly sold his IDTI call options – April 12, 2016 – through the entry of judgment, the SEC is not seeking prejudgment interest for the partial month from May 12 through May 26, 2016, or for the period after May 26, 2016 – when Aly's funds were frozen pursuant to Court Order. (See Pltf. Br. (Dkt. No. 106) at 5 n. 1; Temporary Restraining Order (Dkt. No. 3); Order (Dkt. No. 96))

### C. Civil Penalties

The SEC also seeks "third-tier" civil monetary penalties in an amount equal to the gross amount of the pecuniary gain resulting from Aly's securities violations – namely, $425,665. (Pltf. Br. (Dkt. No. 106) at 6-8)

Section 20(d)(2) of the Securities Act, 15 U.S.C. 77t(d)(2), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), authorize courts to order civil monetary penalties for violations of the securities laws. Congress enacted these provisions pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act"), with the dual goal of punishing the individual violator and deterring future violations. SEC v. Credit Bancorp, Ltd., No. 99 Civ.11395 (RWS), 2002 WL 31422602, at *1 (S.D.N.Y. Oct. 29, 2002) (citing Moran, 944 F. Supp. at 296); Jadidian, 2011 WL 1327245, at *8 ("The purpose of these penalties is to create meaningful financial disincentives to participating in fraudulent conduct. Congress and the courts have recognized that disgorgement alone is frequently not sufficient.").

The Remedies Act provides for three tiers of civil monetary penalties, to be determined "in light of the facts and circumstances." See 15 U.S.C. 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i). The first tier – the lowest level – provides for a $5,000 penalty per violation where the defendant is a natural person. See 15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i). The second tier penalty applies where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and provides for a maximum penalty of $50,000 per violation, or the gross amount of the pecuniary gain resulting from the violation. See 15 U.S.C. § 77t(d)(2)(B); 15 U.S.C. § 78u(d)(3)(B)(ii). The third tier penalty applies where (1) the defendant engaged in conduct involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and (2) that

8

conduct also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." See 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii). For third-tier violations, a court may impose penalties of up to $100,000 per violation, or the gross amount of the pecuniary gain resulting from the violation. See id. Additionally, 17 C.F.R. § 201.1001(b) provides that the civil monetary penalties must be adjusted on an annual basis for inflation.[5]

In determining the appropriate civil penalty, courts consider "'(1) the egregiousness of the defendant's conduct, (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced in light of the defendant's demonstrated current and future financial condition.'" SEC v. Rajaratnam, 822 F. Supp. 2d 432, 433 (S.D.N.Y. 2011) (quoting SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)).

Here, it is clear that a third-tier civil penalty is appropriate. As noted above, Aly engaged in conduct involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement:" Aly obtained filing credentials from Edgar; filed a Schedule 13D with false and misleading statements to artificially inflate the value of IDTI securities; and purchased and sold call options in order to profit from his illicit conduct. (See 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii); Order (Dkt. No. 82)) Aly's conduct also created a significant risk that others would suffer a substantial loss. Investors who purchased

---

[5] When adjusted for inflation, a court may impose up to $184,767 per third-tier violation or the gross amount of the pecuniary gain resulting from the violations. See Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2018), SEC. AND EXCH. COMM'N (Jan. 12, 2018), https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

9

IDTI securities following the false Schedule 13D did so at artificially inflated prices, and experienced substantial losses once the price of IDTI securities dropped, after market realization that the information in Aly's Schedule 13D was false. Accordingly, a third-tier penalty is appropriate. See SEC v. Forest Res. Mgmt. Corp., No. 09 Civ. 0903 (JSR), 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010) (concluding that defendants who engaged in fraudulent scheme to "manipulate[] a publicly traded stock, resulting in the eventual collapse of the stock price" and "hundreds of thousands of dollars in ill-gotten gains for the individual defendants," had committed a third-tier violation).

As to an appropriate penalty amount – in considering the relevant factors discussed above – this Court is mindful that "because disgorgement represents merely a return of ill-gotten gains, an additional monetary penalty is [often] necessary to appropriately punish and deter these sorts of fraudulent activities." Id. Given the circumstances surrounding Aly's fraud, it is clear that a significant civil penalty is required to adequately punish and deter Aly and others from attempting to use false EDGAR filings to manipulate the market for a quick and easy illicit profit. The Court concludes that a penalty of $425,665 – equal to the amount of Aly's pecuniary gain – is justified. See, e.g., SEC v. One Wall St., Inc., No. 06 Civ. 4217 (NGG) (ARL), 2008 WL 5082294, at *10 (E.D.N.Y. Nov. 26, 2008) (concluding that a civil penalty equal to the amount of the defendant's ill-gotten gains was appropriate "in light of the seriousness of the fraud, [the defendant's] key role [in executing the fraud], and the extent of benefits that he directly received from his violation of the securities law[s]").

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment against the SEC (Dkt. No. 96), motion to vacate (Dkt. No. 97), and motion to stay (Dkt. No. 98) are denied.

10

Plaintiff's motion for remedies (Dkt. No. 105) is granted. Defendant is ordered to pay a disgorgement amount of $425,665, plus $1,419 in prejudgment interest, and a civil monetary penalty of $425,665. The balance of Aly's United States brokerage account – which presently holds approximately $458,517 – will be transferred to Plaintiff and applied to Defendant's disgorgement, prejudgment interest, and civil penalty obligations.

The Clerk of Court is directed to enter judgment against Defendant, terminate the motions (Dkt. Nos. 96-98, 105), and close this case.

Dated: New York, New York
October 5, 2018

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge